492 A.2d 720

**COMMONWEALTH of Pennsylvania**

v.

**George Marshall SPARKS, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1984.

Filed May 10, 1985.

---

Michael J. Casale, Jr., Williamsport, for appellant.

Robert W. Ferrell, III, Assistant District Attorney, Williamsport, for Commonwealth, appellee.

Before CAVANAUGH, BECK and TAMILIA, JJ.

TAMILIA, Judge:

Appellant, George Marshall Sparks, was convicted in a jury trial of three counts of conspiracy and three counts of

theft by receiving stolen property.[1] Appellant's motions in arrest of judgment and for a new trial were denied by the lower court. Sentence of one and one-half years to five years of imprisonment and concurrent sentences totalling six and one-half years to nineteen years of imprisonment were imposed. We affirm.

Appellant first contends that the lower court erred in not sustaining the demurrer to the evidence on the conspiracy charges. Because appellant did not rest following the adverse ruling of the lower court, but elected to present a defense, the correctness of the ruling on the demurrer is no longer an appealable issue. *See, e.g., Commonwealth v. Niemetz,* 282 Pa.Super. 431, 422 A.2d 1369 (1980) citing *Commonwealth v. Ilgenfritz,* 466 Pa. 345, 353 A.2d 387 (1976) and *Commonwealth v. Moore,* 398 Pa. 198, 157 A.2d 65 (1959). Hence, we cannot address appellant's contention.

Appellant next contends that the lower court erred in permitting the Commonwealth's introduction of appellant's subsequent criminal activity. Specifically, appellant contends that it was error to admit testimony of the Commonwealth witness, Harry Swank. Swank testified that he had taken two chain saws to appellant's place of business approximately three months after the incidents for which appellant was on trial. Swank stated that he informed the appellant that the saws were stolen and asked appellant if he would buy them. Swank further testified that appellant stated that it was too early in the season, he didn't want the chain saws, he would take all the antiques that Swank could obtain, Swank should inform him of the direction from which the antiques had come and he, appellant, would get the antiques out of town in a day or so.

It is well-settled that evidence of a defendant's other criminal activity is inadmissible as evidence of his guilt at his trial on another charge. *Commonwealth v.*

---

**1.** Appellant was found not guilty of burglary and found not guilty on separate counts of theft and conspiracy. Additionally, the jury determined that the defendant was not "in the business of buying or selling stolen property", 18 Pa.C.S.A. § 3903(a), on the theft counts.

*Kenny,* 326 Pa.Super. 425, 474 A.2d 313 (1984); *Commonwealth v. Shealey,* 324 Pa.Super. 56, 471 A.2d 459 (1984); *Commonwealth v. Barba,* 314 Pa.Super. 210, 460 A.2d 1103 (1983); *Commonwealth v. Martinez,* 301 Pa.Super. 121, 447 A.2d 272 (1982). However, as exceptions to this rule, evidence of other crimes may be introduced to prove motive, intent, absence of mistake or accident, common scheme or plan, or identity. *Commonwealth v. Shealey, supra; Commonwealth v. Barba, supra; Commonwealth v. Martinez, supra.* When one of these exceptions applies, however, the trial court must balance the need for the other crimes evidence against the possible prejudice to the defendant. *Commonwealth v. Morris,* 493 Pa. 164, 425 A.2d 715 (1981); *Commonwealth v. Hawkins,* 295 Pa.Super. 429, 441 A.2d 1308 (1982); *Commonwealth v. Bond,* 261 Pa.Super. 311, 396 A.2d 414 (1978). Nonetheless, " '[w]hen the evidence is relevant and important to one of these ... [exceptions], it is generally conceded that the prejudicial effect may be outweighed by the probative value.' " *Commonwealth v. Hawkins, supra,* 295 Pa.Super. at 438, 441 A.2d at 1312 quoting *Commonwealth v. Peterson,* 453 Pa. 187, 198, 307 A.2d 264, 269–70 (1973). *See also, Commonwealth v. Clayton,* 506 Pa. 24, 483 A.2d 1345 (1984).

■ In the instant case, the Commonwealth was required to prove that appellant possessed stolen goods with knowledge that they were stolen or at least with a belief that they had probably been stolen. 18 Pa.C.S.A. § 3925; *Commonwealth v. Barba, supra.* Appellant's defense to the charge of theft by receiving stolen property was his lack of knowledge regarding the stolen character of the property he was receiving and innocent intent. Appellant had repeatedly testified that he was never told that the goods were stolen and denied knowledge of the stolen character of the goods.

[W]hen the crime charged involves the element of knowledge, intent, or the like, the state will often be permitted to show other crimes in rebuttal, *after the issue has been sharpened by the defendant's giving evidence of accident or mistake, more readily than it would be part of*

*its case in chief* at a time when the court may be in doubt that any real dispute will appear on the issue.

*McCormick on Evidence,* § 190 at 452 (Cleary Ed.1972) (emphasis added). *See also Commonwealth v. Martinez, supra; Commonwealth v. Bond, supra; Commonwealth v. Wright,* 259 Pa.Super. 293, 393 A.2d 833 (1978). At the time the Commonwealth offered the Swank testimony, the issue of appellant's knowledge and intent had been sharpened by appellant's defense. Hence, the Commonwealth needed to introduce the evidence to rebut the assertion of lack of knowledge or intent. *Compare, Commonwealth v. Martinez, supra* (intent not an issue when Commonwealth introduced evidence of subsequent sale of heroin; hence, introduction of evidence not warranted).

Moreover, the Swank testimony was logically connected and related in time to the crimes for which appellant stood on trial in view of the similarities between the incidents. Appellant's motive, method of solicitation and course of conduct were similar to his pattern of receiving stolen goods. Further, the time span of approximately three months between the incidents does not render the Swank testimony inadmissible in view of the similarities between the incidents. *See e.g., Commonwealth v. Clayton,* 483 Pa. 24, 483 A.2d 1345, (1984). The fact that the solicitation of Swank occurred subsequently does not preclude introduction of the testimony. *See e.g., Commonwealth v. Clayton, supra.* The testimony lessened the probability that appellant's possession of stolen goods on the occasions charged was innocent. *See generally, Commonwealth v. Lasch,* 464 Pa. 573, 589, 347 A.2d 690, 698 (1975) (equally divided court); *Commonwealth v. Barba, supra.* For the above reasons, the lower court did not abuse its discretion in allowing the Swank testimony since the Commonwealth's need for the evidence outweighed the prejudicial effect to the appellant.

Appellant next contends that the lower court erred in refusing to instruct the jury that it could draw a negative inference from the fact that the Commonwealth failed to

call two witnesses: William Gunsalles and Larry Achey. These two individuals were named by Commonwealth witness, Harry Swank, during the course of his testimony about appellant's subsequent criminal conduct.

The missing witness rule provides that a negative inference may be drawn from the failure of a party to call a particular witness who was in his control. *Commonwealth v. Harley,* 275 Pa.Super. 407, 413, 418 A.2d 1354, 1357 (1980); *see also Commonwealth v. Owens,* 315 Pa.Super. 400, 462 A.2d 255 (1983). There are, however, exceptions to the rule:

1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining the unbiased truth;

2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and,

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

*Id. See also Commonwealth v. Morris,* 320 Pa.Super. 139, 466 A.2d 1356 (1983); *Commonwealth v. Owens, supra; Commonwealth v. Nesbitt,* 276 Pa.Super. 1, 419 A.2d 64 (1980). The record shows that Mr. Gunsalles was incarcerated and was available to the appellant if he had decided to call him. As such, Mr. Gunsalles was equally available to both parties. The record also shows that appellant did not request the instruction regarding Mr. Achey. Hence, appellant waived the right to challenge error in failing to give the instruction. *Commonwealth v. King,* 287 Pa.Super. 105, 429 A.2d 1121 (1981).

■ Appellant's final contention is that the lower court erred in submitting the "in the business of buying or selling stolen property" counts of the offenses of theft by receiving stolen property to the jury. *See* 18 Pa.C.S.A. § 3903(a).[2] We disagree. The essential, operative elements of theft by receiving stolen property, are set forth at 18 Pa.C.S.A. § 3925:

> **(a) Offense defined.**—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

The final issue presents several problems.

Under the grading section of the Crimes Code, Theft by Receiving Stolen Property, 18 Pa.C.S.A. § 3925, is graded according to seriousness as to value, as is all other theft, except that pursuant to 18 Pa.C.S.A. § 3903(a), it becomes a felony of the third degree "if the receiver is in the business of buying or selling stolen property." In considering the consequence of grading in retail theft, § 3929, *Commonwealth v. Coleman*, 289 Pa.Super. 221, 433 A.2d 36 (1981) held that evidence of prior conviction of shoplifting shall be introduced only at sentencing to determine the grade of the retail theft, § 3929(b). This is so, as proof of a prior conviction at trial would be seriously prejudicial to the defendant, and evidence of prior convictions could be determined at sentencing as a matter of law, without prejudice to the Commonwealth. Obviously, prior convictions were irrelevant to a determination of guilt or innocence of the crime charged and thus are not elements of that crime.

2. § 3903. Grading of theft offenses

    **(a) Felony of the third degree.**—Theft constitutes a felony of the third degree if the amount involved exceeds $2,000, or if the property stolen is a firearm, automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle, or in the case of theft by receiving stolen property, if the receiver is in the business of buying or selling stolen property.

    **(b) Other grades.**—Theft not within subsection (a) of this section, constitutes a misdemeanor of the first degree,....

In this case, a much more complex issue is involved which, in the absence of separate procedures similar to those of the mandatory sentence proceedings,[3] requires a factual determination intrinsically bound with the crime or crimes charged. In those mandatory sentencing cases, again, as with retail theft, the enforcement factors are not elements of the crime charged. The evidence in the case *sub judice*, is not that of prior convictions, but of the conduct of the defendant as it relates to his receipt of the stolen property and involves motive, modus operandi, and common scheme or plan which have long been held admissible in the proof of the crime charged. *See Shealey, Barba* and *Martinez, supra.* As we have discussed above, such testimony (Swank) was properly admitted. Thus while it relates to the grading of the offense, as does prior crimes of retail theft, it is more clearly analogous to homicide grading (second degree murder) when a criminal homicide is committed in the course of committing another enumerated felony. Likewise, assault by prisoner, 18 Pa.C.S.A. § 2703, or Assault by life prisoner, 18 Pa.C.S.A. § 2704, Aggravated assault, 18 Pa.C.S.A. § 2702(a)(2), (3) causing harm to a police officer making or attempting to make a lawful arrest, are crimes which clearly convey by their proof that the defendant was involved in other criminal activity beyond that for which he is specifically charged, but would result in an enhancement in the grading of the offense and sentence. Much, if not too much, is made of the distinction between proof of the elements of the crime and requirements of proof in sentencing. In this instance, to permit proof of the grade of a crime to be handled in a summary fashion at sentencing which could increase the penalty from a maximum of one year (amount less than $50 constitutes a misdemeanor of the third degree) to a felony of the third degree and maximum of seven years, when the question is one of fact and not law, denys the defendant a right to

3. 42 Pa.C.S.A. § 9712. Sentences for offenses committed with firearms, § 9713. Sentences for offenses committed on public transportation, § 9714. Sentences for second and subsequent offenses, § 9715. Life imprisonment for homicide.

judgment by his peers, and a denial of due process. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). It is not only the element of a crime that requires proof beyond a reasonable doubt, but also other matters which could impinge on defendant's liberty interests.[4]

As to grading of other theft offenses, it is clear that value becomes determinative and this, too, is a factual question, which has been regarded as a jury question, although it is not an element of the crime. *Commonwealth v. Mathis*, 317 Pa.Super. 226, 463 A.2d 1167 (1983). During jury trials it is the custom to charge the jury that one of its functions is to establish the value of the goods stolen so that the *court* can determine the grade of the offense for

**4.** A response would appear to be required to Judge Beck's Concurring Opinion. First, she agrees with the majority's result on the issue of "in the business of" but prefers the language of the lower court. I have no quarrel with the lower court's reasoning or language, but believe the function of an appellate Opinion is to go beyond the analysis of the lower court and provide more specific directions or broader analogies where required. Rather than quoting the lower court extensively, as does the Concurring Opinion at pages 7 and 8, we delineated the distinction between this case and *Coleman* as one based on a factual element requiring a jury determination, as opposed to *Coleman*, which could be determined as a matter of law by the court at sentencing. The remainder of the lower court's analysis was instructive but not necessary to our consideration. In further amplification, the need to buttress the procedure followed by the lower court, and in guiding other courts, required that we analogize this procedure and statute with others incorporating criminal activities as an *element* of crime which one must prove, as it relates to grading or severity of the crime. This is one of the most volatile areas of criminal law, as similar issues are present in sentencing guidelines and mandatory sentencing cases. *In re Winship, supra,* is a crucial case to this decision, as any matter which effects penalty and results in loss of liberty or increased incarceration must be established beyond a reasonable doubt and hence, is a matter for the trier of fact, here, the jury. The exception would be *Coleman* type situations. It matters little that appellant did not wish to have the issue presented to the jury (obviously because it was inculpatory); a finding by the jury without that evidence as properly explained by the judge's instructions, would have been a nullity, as the charge could not be sustained without jury consideration of that essential element. *In re Winship* is a key as to when evidence should or should not be presented to a fact finder as a requisite to establishing guilt, and is completely justified as authority for the trial court's decision in this case.

sentencing purposes. *See* Pennsylvania Suggested Standard Criminal Jury Instruction 15.3903.

Here, the evidence as to defendant's involvement as "being in the business" was entered on the record. The court properly instructed the jury, concerning a finding in this regard, which the jury chose to ignore, and we fail to see any prejudice to defendant thereby.

Judgment of sentence affirmed.

BECK, J., files a concurring opinion.

BECK, Judge, concurring:

I agree with the majority's result and resolution of the first three issues. As to the fourth issue, I agree with the result of the majority but would adopt the reasoning of Judge Clinton W. Smith of Lycoming County.

Since the trial judge stated his reasons so cogently, I take the liberty of quoting from his opinion at pages 7–9:

> The next error which the defendant assigns to his trial is that the 'in the business of' counts should not have been given to the jury. The substance of this allegation is that the "in the business of" goes to the grading of the offense and should have been decided by the Court. The defendant further contends that to submit this issue to the jury was prejudicial in that it concerned prior criminal activity which is usually inadmissible evidence.

> To back its contention that the 'in the business of' counts should not have been given to the jury the defendant cites to the case of *Commonwealth v. Coleman,* 289 Pa.Superior Ct. 221, 433 A.2d 36 (1981). In *Coleman* the defendant was convicted of Retail Theft, third offense. During the trial the Commonwealth, in addressing the jury, referred to the prior convictions of the defendant. The Superior Court upheld the grant of a new trial on the basis that the prior conviction evidence should not have been given to the jury. The Court held that such information was prejudicial and that since it went solely to

grading for the purposes of sentencing and not to an essential element of crime it was inadmissible.

At first blush it may appear that the statute at issue in *Coleman* and that at issue in the present case are similar. Both have sections labeled "grading" which describe the occasions when one convicted of the offense will receive a more severe sentence. However, there are distinctions between the two statutes which render the logic used by the Court in *Coleman* inapplicable to the present case. The statute at issue in *Coleman* was one designed to deal with the recidivist. Under such a statute the only determination necessary to assign a grade to the offense is how many prior convictions of the same offense are on record. This is a determination easily made by the judge. There is no question of fact for a jury to decide. Further, evidence of prior conviction is not relevant to a determination of whether the defendant is guilty of the Retail Theft charge for which he is being tried.

The distinction between the two types of grading sections is that while the grading section of the Retail Theft statute provides greater penalties for a greater number of convictions, the grading section of the Theft by Receiving statute provides for greater penalties for the more severe offense. The offense is more severe if the defendant is "in the business of buying or selling stolen property". Whether defendant is "in the business of" can only be established by the introduction of evidence relating to acts by the defendant from which such activity can be inferred. The believability of such evidence will depend on the credibility of the witnesses and on the amount and content of the testimony. Clearly, such factual determinations are to be made by the jury. Evidence of prior occasions when the defendant received stolen goods is relevant to the determination by the jury of whether the defendant is "in the business of."

The defendant, in effect, is arguing that simply because an element of the crime is found in the grading section of the statute it automatically falls under the *Coleman*

precedent and, therefore, it becomes a determination for the Court at the time of sentencing. However, the Court will not assume such a motive on the part of the legislature. The particular language of a statute is often chosen for purposes of convenience, clarity or economy. Legislation framed with these aims in view is often lacking in consistency. A review of Pennsylvania's statutes will show that in some cases the grading occurs within the paragraph defining the offense while in other cases the offense is defined in the grading section. A review of the Theft by Receiving statute indicates that it is of the latter type. The legislature could not have intended to replace the judgment of the jury with the judgment of the Court in such factual determinations simply by locating particular elements of the offense in the grading section of the statute.

The logic of locating elements of an offense dealing with the severity of the offense in the grading paragraph of the section is obvious. The Court will not interpret a statute to permit the Court to usurp the traditional function of the jury simply because elements of the crime are found in a paragraph of the statute labeled "grading". For the above stated reasons [this] ... assignment of error will be dismissed.

The majority appears to base its resolution of this issue, in part, on the due process guarantee embodied in *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). Insofar as the majority is asserting that due process requires the fact finder to determine whether appellant was "in the business of" receiving stolen property, I agree. However, given the posture of the appeal sub judice, I find *In re Winship* inapposite since, contrary to the *In re Winship* principle, the instant appellant is arguing that the trial judge erred in submitting to the jury the factual question of "in the business." Thus, appellant is not asserting a violation of the *In re Winship* principle but, if anything, he is requesting the court to contravene or disregard *In re Winship*.